No. 32,092

L. A. Brotton, *Appellant*, v. F. M. Luther, Jr., J. B. Bradford and George W. Hermann, *Appellees*.

(41 P. 2d 1017)

Opinion filed March 9, 1935.

*Oliver W. Weber*, of Salina, for the appellant.

*Austin M. Cowan, C. A. McCorkle, J. D. Fair, W. A. Kahrs* and *Robert H. Nelson*, all of Wichita, for the appellees.

The opinion of the court was delivered by

Smith, J.: This is an action for damages for breach of a contract in one cause of action, and for an order directing the conveyance to plaintiff of a tract of real estate in the second cause of action. Judgment was for defendants. Plaintiff appeals.

The case is here on an appeal from an order sustaining a demurrer to the petition. The petition contained allegations with reference to three lawsuits in which plaintiff has been involved. The pleadings, exhibits and journal entries of these actions are referred to in the petition, or attached to it. A statement of the history of this litigation is necessary to an understanding of the case and will be given here.

The first case was that of *Good v. Brotton*, No. 62,734, in the district court of Sedgwick county. It was a suit to foreclose a mortgage on certain real estate in Sedgwick county. The tract,

conveyance of which is sought, is a part of the real estate covered by this mortgage. The entire tract will be spoken of as the Brotton Terrace property. The specific tract involved here is lot No. 17. This case went to judgment, and the real estate was bought on August 20, 1927, by Good, the plaintiff in that action.

In January, 1928, the wife of plaintiff brought suit for divorce against him in the district court of Sedgwick county. This was case No. 54,725. Several orders were entered in this case and the record shows Brotton was present at the time of the entry of all of them. A decree of divorce was granted the wife of plaintiff. On account of the foreclosure suit a receiver was appointed in the divorce action for the property in question. On March 18, 1929, the real estate in question was sold under order of the court by the receiver. The sale was confirmed on the same day. The purchase price was paid into court. After the payment of certain sums ordered paid by the court the balance of the purchase price in the amount of $4,534.58 was, under order of the court, paid to Brotton. Pursuant to an order of the court at the time the sale was confirmed Brotton executed and delivered a quit-claim deed to the property in question to the purchaser, J. B. Bradford, one of the defendants in this action. It appears from the record that Bradford paid Good for his interest in the property and obtained a sheriff's deed in the case of *Good v. Brotton* at the termination of the period of redemption. .

While the divorce action was pending and on January 16, 1929, Brotton, the plaintiff in this action, and one F. M. Luther, entered into the contract, which is the basis of this action. It is as follows:

"This agreement entered into this 16th day of January, 1929, between L. A. Brotton, first party, and F. M. Luther, Jr., second party, both of the county of Sedgwick and state of Kansas.

"WITNESSETH: Party of the first part has an equity in and to lots one (1) to nineteen (19), inclusive, in Brotton's Terrace in Sedgwick county, Kansas, being a part of the northwest quarter of section 25, township 27, range 1 east, containing 60 acres more or less. W. R. Good has foreclosed a mortgage on said land and the title to this land is clouded by an action in the district court of Sedgwick county, Kansas, wherein Adda B. Coopage, formerly Mrs. L. A. Brotton, has been allowed a claim against said land for a certain amount now listed in said court.

"Party of the second part is desirous of purchasing the equity of said first party in said tract of land and agrees to pay therefor the following consideration: The parties hereto shall make an effort to settle the claims of Adda B. Coopage and her attorneys, also all court costs in this case and also the attorney fees of George McGill, Ray Tinder and Clarence Sowers for services

rendered to the party of the first part in this case, for the sum of $3,000, and it is agreed that should they be not able to make settlement for said sum then the second party may elect to pay the amount necessary for settlement; should second party not be willing to pay the amount necessary to make settlement of the above claims then this agreement shall be null and void, but should this consideration be fulfilled then second party further agrees to pay to first party the sum of $3,300, ten dollars of which has been paid, and receipt of which is hereby acknowledged; second party further agrees to deliver to first party, after this agreement is fulfilled as to the performance of items other than this, to deliver to first party a deed conveying back to first party lot seventeen (17) as described above, free and clear of encumbrance.

"It is agreed by the parties hereto that the matters of court costs, attorney fees and Adda B. Coopage settlement be taken care of on or before January 19, 1929, or this contract shall be null and void.

"Signed and delivered in duplicate the day and year first above written."

On January 19, 1929, the following was indorsed on the contract:

"The time of closing this agreement is hereby extended until such time as settlement with Adda B. Coopage can be made. Such time to be reasonable."

On August 9, 1929, Mr. Brotton filed the above contract for record with the register of deeds. On the same date he filed with the register of deeds an affidavit which he called "Declaration of Interest." It was addressed "To Whom It May Concern." It notified any person reading it that he was the owner of lot No. 19 [17] of the premises described. He claimed in this notice to have acquired lot No. 19, [17] pursuant to the contract with F. M. Luther, set out above. He added the following:

"I further notify you that on or about March 16, 1929, one J. B. Bradford purchased this property at a receiver's sale for F. M. Luther, Jr., and that while the property stands in the name of J. B. Bradford, it actually belongs to and is the property of F. M. Luther, Jr., and J. B. Bradford."

It will be remembered that these documents were filed nearly six months after Brotton had given Bradford a deed to the property in question, which included lot No. 17, and had received the $4,534.58 as part of the proceeds of the sale of the property.

After the filing of these two documents and in September, 1929, Bradford brought suit against Brotton to cancel them as a cloud upon his title. This suit is No. 70,713 in the district court of Sedgwick county. In that suit Bradford alleged that he was the sole owner of the property; that Brotton had no interest therein; that it was not purchased pursuant to any agreement with F. M. Luther, but at a receiver's sale, and that he held title by means of a sheriff's deed and a quitclaim deed from Brotton. The petition further alleged

that F. M. Luther never attempted to carry out the terms of the contract heretofore set out and that it became null and void. Brotton filed an answer denying generally all the allegations of the petition, and setting up specifically that Brotton was the owner of the land in question. The answer attacked specifically the various orders in case No. 64,725, the divorce case. The answer further tendered into court the amount of the mortgage indebtedness and attached copies of the various documents in case No. 64,725. Case No. 70,713 was tried and judgment was entered on November 12, 1929. The court found generally for the plaintiff. The court specifically canceled the affidavit of August 9, 1929, filed by Brotton, and the agreement of sale between Brotton and F. M. Luther, and held it for naught and enjoined Brotton from making any claim to the premises. Brotton filed a motion for a new trial and this was overruled. An appeal was taken to this court. This appeal was dismissed for lack of prosecution. A petition for rehearing was filed and denied. Subsequently a motion to set aside the judgment, rendered on August 12, 1929, and the order overruling the motion for rehearing, were filed and denied. From this order an appeal was taken to this court and the appeal was dismissed.

The facts just stated are mainly matters of record and do not appear to be disputed, although the legal effect of them is in dispute.

At first sight, it appears that the demurrer to the petition was properly sustained in view of the fact that the action is based on the contract of January 16 and the pleadings and exhibits plainly show that it was a contract to settle a lawsuit, provided it could be settled on certain terms; and that if it could not be settled on those terms the contract was void and that the case was not settled on any terms, but went to judgment in the regular way. Clearly the force of the contract spent itself before Bradford acquired the property. In view, however, of some allegations contained in the petition, it will be necessary to examine it at length. It will be noted that the action is against F. M. Luther, J. B. Bradford and George W. Hermann.

The petition alleges the facts about the different lawsuits against the plaintiff. It then alleges the execution of the contract heretofore set out. It should be noted that plaintiff describes the contract as though it had been executed by all three of the defendants on one side and Brotton on the other, while the contract speaks for itself and is between F. M. Luther and Brotton, with no reference to any other person.

The petition then alleges that by the terms of the contract F. M. Luther, acting for the defendants, was to pay the plaintiff $3,300 and to settle all claims of Mrs. Brotton for $3,000 or to pay more to Mrs. Brotton, if they should so elect, but regardless of what was paid Mrs. Brotton defendants were to pay Brotton $3,300 and convey to him lot No. 17. The petition alleges that Luther elected to do the latter at the receiver's sale by the purchase of the property in the name of J. B. Bradford and that the contract was made in contemplation of the receiver's sale. The items covered by the judgment in the divorce case are set out, and it is alleged Luther elected to pay that amount to Mrs. Brotton. It is alleged that Bradford and Hermann were at all times either co-obligors with Luther on the contract or they were his partners at all times. The petition sets out the cases heretofore described and states that defendants knowing of these cases deliberately broke the contract, to the great disadvantage of the plaintiff. The petition then alleges that defendants breached their contract with plaintiff with the intent to stifle competition in the sale of the property in question; that to effectuate this purpose they caused the action heretofore spoken of, No. 70,713, this being the action wherein the contract sued on was set aside, to be filed; that they so involved plaintiff in litigation as to cause plaintiff to lose his right to sell the property; that when F. M. Luther bought the land at the receiver's sale he really settled the case with Mrs. Brotton, in pursuance of the contract sued upon; that thereafter Brotton was compelled to sign a quitclaim deed to the property to Bradford, in violation of the contract, and that he was given in return for the deed the check of the receiver for $4,534.58; that he accepted the check under protest only because of the order of the court, and thereby all the right plaintiff has ever had in Brotton Terrace was taken from him, and property of an actual and probable market value of $60,000 was taken for $4,-534.58; that instead of living up to their contract and protecting the interests of plaintiff, defendants did what they could to prevent a settlement with Mrs. Brotton and maneuvered the various lawsuits against plaintiff in order to convert Brotton Terrace to their own use.

The petition then alleges twenty-one specific things which defendants did to prevent a fair sale of Brotton Terrace.

Charge 1 is that defendants forced the closing of the Wm. Merrit Brotton estate on July 11, 1930, in order to clear the title and clear

the way for the manipulation of other suits mentioned. It should be noted here that all the cases spoken of had been closed before July 4, 1930.

The second specific instance is that on March 23, 1929, defendants procured allowances of exorbitant alimony, expenses and attorney's fees in the divorce case and the suit to quiet title. It should be noted here that on March 23, 1929, the injunction suit had not been filed and the divorce suit was closed on the day the allowances were made. Furthermore, defendants were not parties to that suit, the awards were not objected to when made, and what is attempted by plaintiff is to attack in a collateral proceeding a judgment in another case.

The next specific act, No. 3, charged to have been performed by defendants, is the procuring of the appointment of a receiver in the divorce case. It should be noted here that defendants were not parties to the divorce case, and furthermore what was said about instance No. 2, as to the collateral attack, might very well be said here.

Specific charge No. 4 is that defendants intimidated plaintiff by procuring orders charging him with contempt in order to prevent his acting as broker of his own property in the divorce case and the suit to quiet title. In connection with that charge it should be noted that defendants were not parties to the divorce case, and at the time the property was sold by the receiver the suit to quiet title had not been filed.

Specific charge No. 5 is that defendants procured superfluous orders in the two cases in attempts to hinder plaintiff in settling his divorce case. What has been said with reference to charge No. 1 might very well be said to this charge.

Specific charge No. 6 states the bringing of the suit to quiet title. This charge is nothing more than a collateral attack on a judgment in another case.

Charge No. 7 alleges that defendants, through some scheme, caused a petition for rehearing to be denied upon illegal and improper grounds in the suit to quiet title without notice to plaintiff and afterwards induced the attorney for plaintiff to depart to some unknown address. The journal entry in that case recites that the attorney of plaintiff was present. In any event, any irregularity in the orders made in that case could have been raised and settled in that case. Indeed, the record shows that this question was raised and presented to the court and relief was denied plaintiff. In view of

that situation, such matters have no weight in the petition in this case.

Charge No. 8 is that about July 2, 1933, defendants through their attorney refused a correction of a journal entry in the suit to quiet title and thereby cut off the right of plaintiff to appeal. He charges that this conduct constitutes fraud on the part of defendants. The conduct described does not render the judgment void, only voidable if true. It was raised in the attempt to have a review of the case in which it is alleged to have occurred. No reason appears why it would render the judgment subject to a collateral attack, as is attempted here.

The petition then sets out thirteen additional specific instances of conduct on the part of defendants of which they sought to prevent a settlement of the divorce case. It would add nothing to this opinion to set them out here. They have all been examined and it is plain that they are all attempts to raise in this case, by means of a collateral attack, questions that were raised and passed on in one or the other of the three cases that have gone before.

The petition then alleges that in the divorce case Mr. and Mrs. Brotton agreed that the real estate in question was worth $60,000; that defendants secured it at the receiver's sale for $20,399; that the illegal profit to defendants is the difference in these two amounts, or $39,601. It may be said here that the above is the only allegation as to value of the real estate in question. As a matter of fact, it is no allegation of value at all, but simply an allegation of what plaintiff and his wife agreed the property was worth. Hence, there is no measure of damages in the petition. The petition then states generally what has already been stated, and that plaintiff was caused by acts of defendants to spend four months in the hospital and that on this account he is entitled to $10,000 exemplary damages from defendants. This makes $49,601, for which plaintiff asks damages in the first cause of action.

In the second cause of action, plaintiff makes all the paragraphs of the first a part and states that if defendants still hold the title to the property they hold it in trust for plaintiff; that he has no adequate remedy at law on account of the insolvency of defendants. Plaintiff prays in the second cause of action that defendants be ordered to convey to him lot No. 17 in the Brotton Terrace property.

Shorn of unnecessary verbiage, the petition states that defendants and plaintiff entered into a contract whereby the defendants were to settle the divorce suit of plaintiff and that instead of settling the

suit defendants breached the contract and took advantage of plaintiff. The story of plaintiff, as related in this petition, is one of fraud and misconduct on the part of lawyers as well as parties.

It will be remembered that when the divorce suit was finally adjudicated the real estate of plaintiff was ordered sold by the court and the proceeds distributed. Mr. Bradford, one of the defendants, bought the property. The contract, which is the subject of this suit, was between plaintiff and Mr. Luther. It would appear from this that the divorce suit went to final judgment and was not settled as a result of the contract. Plaintiff attempts to meet this situation by allegations that defendants were in collusion to ruin him and really acted in concert. The record shows that after Bradford had bought the property at the receiver's sale and the court distributed the proceeds Brotton received $4,534.58. He gave Bradford a quitclaim deed to the whole tract, which included the property he is now claiming. It will be remembered that by the terms of the contract, sought to be enforced here, Brotton was to receive $3,300 and lot No. 17. By the terms of the distribution that was finally made he received $1,234.58 more than the amount he was to have received under the contract. He, of course, did not receive the conveyance of lot No. 17. It would appear that the acceptance of the money paid him as his share of the purchase price of the real estate and his giving the deed would preclude his afterwards setting up any claim to lot No. 17. He attempts to get around this situation by alleging that he was compelled to make the deed and take the check by a court order.

At this point the weakness of the case of plaintiff becomes apparent. The record shows that no appeal was taken from the judgment and orders of the court in the divorce case. If the judgment disposing of the proceeds of the property was erroneous, the proper action in which to have that corrected was the case that had been decided. The present action is a collateral attack on the judgment in the divorce case. (See *Goodman v. Cretcher,* 132 Kan. 142, 294 Pac. 868.) A party cannot allow a case to go to final judgment and then question the correctness of that judgment in another action unless the judgment questioned is void. (See *Morris v. Sadler,* 74 Kan. 892, 88 Pac. 69; also *Morris v. Robbins,* 83 Kan. 335, 111 Pac. 470.) There is no claim that the judgment was void. Much more is said in the briefs of parties and more might be said here, but we doubt if much could be added to what has been said on the subject.

The judgment of the trial court is affirmed.